Chief Judge Desmond (dissenting).
This appeal was properly-allowed by us. It brings to us the important and as yet undecided question as to what are the discovery rights of a citizen who learns, or has good reason to believe, that his office or home is being eavesdropped (and wire tapped) pursuant to a secret ex parte order. The petition was addressed to the Appellate Division. The court unanimously and without opinion denied relief. In granting petitioner leave to appeal we necessarily treated the petition as one commencing a civil special proceeding.
Petitioner’s allegations may be summarized thus: he is an attorney maintaining a law office in New York City; he believes that his office space has been subjected to electronic eavesdropping by respondent District Attorney the basis for such belief being information received from a named person described as an expert in the field who discovered the installation in the office of ‘ ‘ direct wired eavesdropping devices ’ ’, information from one of petitioner’s office associates, an attorney, indicating the eavesdropping of conversations in the office and statements made to clients of petitioner and stenographic transcripts of an examination of several witnesses in a civil suit. This is, therefore, not a case where a citizen merely harbors suspicions of eavesdropping or wire tapping and comes into court to have his suspicions confirmed.
The petition alleges that these eavesdropping installations were contrary to various provisions of the Federal and State Constitutions and statutes including the provisions of the New York State Constitution relating to due process of law, unreasonable search and seizure and self incrimination. Belief was demanded as follows: that the District Attorney file an answer admitting the existence of the eavesdrops and giving the text of any court order authorizing them or that he be ordered by the court to disclose to petitioner the order and the affidavits on which it was granted and that the court make such other directions as may be just and proper including vacatur under CPLR 5704 (subd. [a]) of any order permitting an eavesdropping at petitioner’s premises.
The District Attorney filed no answering pleading with the Appellate Division but apparently submitted to the court a brief urging that on various grounds the petition be denied.
First, we have a question of procedure arising, primarily, *334 because the application was directed not to the Supreme Court but to the Appellate Division. We need not go so far (see 1 Carmody-Wait, New York Practice, pp. 186-187) as to hold that the Appellate Division has all the original powers given to the Supreme Court by law. The heading of the petition indicates that it is brought pursuant to CPLR article 4 and CPLR 5704 (su-bd. [a]) indicating the petitioner’s theory that he is either instituting a civil separate special proceeding or moving the Appellate Division (5704, su-bd. [a]) to vacate an ex parte order made by a Supreme Court Justice. Subdivision (a) of 5704 seems to carry the same general meaning as sections 66 and 132 of the former Civil Practice Act which said that the Appellate Division or a Justice thereof may “vacate or modify * * * any order * * * of the Supreme Court ” or a Justice thereof granted “ without notice to the adverse party.” The eavesdropping order (and wire-tapping order), if there be any .such in existence, must have been granted without notice under section 813-a of the Code of Criminal Procedure, and kept secret from the occupant of the premises. 5704 (subd. [a]) is so general and sweeping in language that it should be available for vacatur of any ex parte order. This is particularly true since if that section be not available there is no New York statute providing any relief for a citizen who learns that his premises had been “ bugged ”. It is .significant that in enacting 5704 (subd. [a]) the Legislature dropped out one clause in old section 132 of the Civil Practice Act which had bestowed the vacating power as to any order “in an action or special proceeding”. Subdivision (a) of 5704, much more broadly stated, applies to “ any order of the supreme court or a justice thereof ” which has been granted ex parte.
Silverman v. United States (365 U. S. 505) held that eavesdropping by means of a physical intrusion of electronic devices into private premises is a violation of the Fourth Amendment (similarly, Clinton v. Virginia, 377 U. S. 158). It would seem (see Mooney v. Holohan, 294 U. S. 103; Matter of Lyons v. Goldstein, 290 N. Y. 19) that for transgressions of the Constitution, perpetrated by the State itself, there must be a remedy. It is no answer at all to suggest that petitioner who (so says the District Attorney’s brief) has been indicted for a *335 crime must await trial and then object to the admission of the evidence obtained secretly. (Under current decisional law the objection would be overruled [see People v. Pugach, 16 N Y 2d 504].) Unless there be some discovery granted here, the scope and bearing of the eavesdropped information meanwhile remains unknown. Can it be that a citizen must tolerate a continuing and unconstitutional invasion of his premises until comes the day, if ever, when eavesdropped evidence is offered against him in open court?
There should at least be a judicial inquiry as to whether material which incriminates petitioner or others was obtained in such manner and for such purpose as to violate the Fifth Amendment of the Federal Constitution or section 6 of article I of our State Constitution.
As to Federal constitutional violations the United States Supreme Court decision which most insistently demands judicial action on this petition is Griswold v. Connecticut (381 U. S. 479 [June, 1965]). The majority there held that, besides the specifics of the Bill of Bights, there are important and equally fundamental collateral or resulting rights including those setting up “ zones of privacy ” and including the right to be unmolested in the repose of one’s private quarters, as well as the right to be secure therein against physical invasions made for the purpose of obtaining incriminating evidence. It is impossible to read the eloquent and extensive Griswold opinions except as meaning that any secret incursion into a private building is a direct and inexcusable violation of the Fourth and Fifth Amendments. We should hold no less as to our State’s constitutional guarantees as expressed in sections 6 and 12 of article I of our State Constitution.
Furthermore, it is plausibly argued by appellant that the granting of adequate relief to him is not really inconsistent with our State statutes, particularly CPLR 4506 and Code of Criminal Procedure sections 791 and 813-b, 813-c, 813-d and 813-e, all enacted or re-enacted subsequent to Mapp v. Ohio (367 U. S. 643). All these statutes in one form or another recognize that the Mapp rule is now the law of the States and that evidence obtained in violation of the Bill of Bights, particularly the Fourth Amendment, is outlawed. Indeed, there is *336 some evidence that the Legislature itself had in mind that there might be subsequent judicial proceedings looking to a discovery as to the basis and validity of eavesdropping orders. Section 813-a of the Code of Criminal Procedure requires that, while an eavesdropping order may be issued ex parte and remain unfiled, the issuing Judge must retain a copy thereof and the applicant must receive and retain the order itself. Unless some subsequent scrutiny is to be available, there is no reason for requiring such retentions.
Regardless of what the Federal courts have held or will hold, we should give effect to our own State Constitution by holding at least that a citizen, who has the best of reasons to believe that his premises have been “bugged”, may inquire into the grounds therefor and in an appropriate case have an injunction against any continuation of such practices and the use of evidence obtained thereby. It is a first duty of any court to obey the letter and spirit of controlling law. In Silverman v. United States (365 U. S. 505, supra) true physical eavesdropping was held violative of the Fourth Amendment (see Wong Sun v. United States, 371 U. S. 471, 485, construing Silverman as a holding that the Fourth Amendment protects “against the overhearing of verbal statements ”'as well as against 'the unlawful seizure of objects). In Griswold v. Connecticut (381 U. S. 479, supra) it is plainly said that all physical invasions of privacy are illicit. Why should we not forthrightly honor and obey these controlling rules?
The order appealed from should be reversed and the matter remitted to the Appellate Division so that it, or the Supreme Court by direction of the Appellate Division, may conduct a full judicial inquiry as to whether there has been such eavesdropping as is alleged in the petition, as to the asserted bases therefor and as 'to the information obtained thereby. With such material before us and with appropriate rulings below, we can decide once and for all as to the constitutionality of eavesdropping on private premises in this State. For the present we would grant no relief as to alleged wire tapping.
Judges Dye and Bergan concur on the ground that any action of the Appellate Division in this proceeding is purely discretionary and not reviewable by this court and Judges Burke and Soileppi for the reasons stated in their memorandum; Chief *337 Judge Desmond dissents and votes to reverse and to grant partial relief to petitioner in an opinion in which Judges Fuld and Van Voorhis concur.
Order of this court dated October 1, 1964 granting leave to appeal vacated.